# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION



David Lee Newman,                    :          Case No. 5:08CV0483
                                     :
            Petitioner               :          Judge Solomon Oliver, Jr.
                                     :
       v.                            :          Magistrate Judge David S. Perelman
                                     :
Julius Wilson, Warden,               :
                                     :          **REPORT AND RECOMMENDED**
                                     :          **DECISION**
            Respondent               :


In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his November 17, 2005 re-re-sentencing to thirteen years in prison consequent to his January 14, 2002 conviction pursuant to a plea of guilty to one count of aggravated robbery with a firearm specification.[1]

Petitioner's complex sentencing history was summarized by the state appellate court as follows:

> Appellant was originally charged with four counts of aggravated robbery, in violation of R.C. 2911.01(A)(1), each with a gun specification. On January 14, 2002, following a failed polygraph examination, Appellant pleaded guilty to one count of aggravated

---

[1] The petition was filed by the Ohio Public Defender (OPD). Contemporaneous therewith the OPD filed a motion to withdraw and to have substitute counsel appointed. On March 26, 2008 this Court granted the OPD leave to withdraw, and in that Order stated that "Once the return/answer has been filed and the issues clarified petitioner, who will then be *pro se*, may file a motion for appointment of counsel." He has not done so.

robbery, with the attached specification, whereupon the remaining counts were dropped. The court sentenced Appellant to ten years on the aggravated robbery count and three years on the gun specification, to be served consecutively. The court further noted that Appellant would be subject to post-release control and ordered Appellant to pay the costs of the action. Appellant timely appealed that original sentence. On appeal, Appellant asserted that the trial court erred in sentencing him to a maximum sentence. This Court affirmed Appellant's sentence, finding that the trial court had properly determined that Appellant committed the worst form of the offense and posed the greatest likelihood of committing future crimes. *State v. Newman,* 9th Dist. No. 20981, 2002 Ohio 4250. The Ohio Supreme Court accepted Appellant's appeal and reversed and remanded the sentence due to the trial court's failure to make certain required findings on the record as required under *State v. Comer,* 99 Ohio St.3d 463, 2003 Ohio 4165, 793 N.E.2d 473. *State v. Newman*, 100 Ohio St.3d 24, 2003 Ohio 4754, 795 N.E.2D 663.

On remand, Appellant filed a motion to withdraw his guilty plea, which the trial court denied. At the re-sentencing hearing, the court indicated that it would impose a sentence of ten years for the aggravated robbery conviction and three years for the specification, for a total of thirteen years incarceration. The court failed to explain that Appellant would be subject to post-release control, and did not, at the hearing, order Appellant to pay costs. The sentencing entry, however, stated that Appellant would be subject to post-release control and ordered him to pay the costs associated with the action. Appellant timely appealed. This Court upheld the plea bargain but vacated the conviction because the trial court had failed to give the requisite post-release control notification as required under *State v. Brooks,* 103 Ohio St.3d 134, 2004 Ohio 4746, 814 N.E.2d 837, paragraph one of the syllabus. *State v. Newman*, 9th Dist. No. 21970, 2004 Ohio 5180.

On remand, Appellant and his counsel attempted to renew his motion to withdraw his guilty plea. The trial court refused to hear the motion, noting that the trial court had already denied that motion and that this Court had already affirmed the trial court's denial of the motion. On November 17, 2005, the trial court sentenced Appellant to a maximum thirteen years in prison.

Petitioner appealed his November 17, 2005 re-re-sentencing to the Ohio Ninth District

2

Court of Appeals alleging two assignments of error:

I.    The trial court erred by imposing an illegal sentence.
      Sentencing Entry, Nov. 30, 1995[2], T.p. (Nov. 17, 2005) 9-13.

II.   The trial court erred by refusing to hear Mr. Newman's
      presentence motion to withdraw his plea.    Motions to
      Withdraw Plea, T.p. (Nov. 17, 2005) 8-9.

In petitioner's reply brief in that appeal he asserted two new issues, arguing that his sentence

constituted plain error and that he had been denied the effective assistance of trial counsel by

reason of counsel's failure to raise a violation of the rule of law set out by the United States

Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004).

On August 9, 2006 the state appellate court affirmed the judgment of the trial court, and two

weeks later granted petitioner's motion to certify the following issue in light of a conflict between

the districts thereon:

> Whether a defendant [that] is sentenced after the decision in *Blakely
> v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d
> 403, must raise the issue of the constitutionality of the relevant
> sentencing statute(s) severed by *State v. Foster*, 109 Ohio St.3d 1,
> 2006-Ohio-856, at the time of sentencing in order to preserve the
> issue of the constitutionality of the relevant statute(s) for appeal.[3]

On September 25, 2006 petitioner appealed to the Ohio Supreme Court the August 9, 2006

appellate court ruling, alleging the following five propositions of law:

---

[2]Respondent reads this date, as does this Court, as a typographical error which should have read "2005," the year
the judgment was journalized by the trial court.

[3]Respondent notes, and this Court agrees, that the petitioner could not have been sentenced pursuant to the Foster
case, in light of the fact that Foster was decided on February 27, 2006, after all of the sentencing, including the re-
re-sentencing, in his case. The pertinent sentencing statute, R.C. 2929.14(B) and (C), required judicial factfinding
to overcome both the presumptive imposition of a minimum term of imprisonment, as well as to impose the
maximum term of imprisonment. The Foster case eliminated the requirement that there be judicial factfinding in
imposing greater than minimum, maximum and consecutive sentences.

3

**Proposition of Law No. I:** When the sentencing scheme in which the presumptive minimum sentence has been eliminated subsequent to a defendant's plea, a defendant should be permitted to withdraw his plea.

**Proposition of Law No. II:** *State v. Dudukovich* is wrong: Sentences that violate *Blakely* are void and can be challenged on direct appeal without objection in the trial court.

**Proposition of Law No. III:** The remedy set forth in *State v. Foster* violates Ex Post Facto and Due Process Clauses of the United States Constitution.

**Proposition of Law No. IV:** Trial counsel is ineffective for failing to raise *Blakely* error, and appellate counsel is ineffective for failing to raise trial counsel's ineffectiveness and plain error when the failure to properly preserve the issue results in the affirmance of the maximum possible sentence.

**Proposition of Law No. V:** A trial court must hear and consider a motion to withdraw a plea before sentencing a criminal defendant.

On November 29, 2006 the court accepted the second proposition of law for review, and held the matter in abeyance pending decisions in two other appeals raising the same issue.

Nearly a year later (on October 24, 2007) the state supreme court affirmed the appellate court's judgment on the authority of State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642 (Sept. 26, 2007). On that same date, the court answered the certified question in the affirmative.

No further appeal was taken.

On February 27, 2008 the petitioner filed the instant petition, in which he raises the following four claims for relief:

**A. GROUND ONE:** Petitioner's right to a trial by jury and due process, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution was violated when he was sentenced after an involuntary guilty plea.

4

**B. GROUND TWO:** Petitioner's protection against the ex post facto application of the law and his right to due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court retroactively applied the decision in *Foster* to Petitioner's case.

**C. GROUND THREE:** Petitioner was denied his right to the effective assistance of trial and appellate counsel, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States, when trial and appellate counsel failed to correctly raise the *Blakely* issue.

**D. GROUND FOUR:** Petitioner was denied the right to have a jury determine his guilt beyond a reasonable doubt and the right to the effective assistance of counsel, as guaranteed by the Fifth, Sixth and Fourteenth Amendment rights to due process, when the trial court determined that it would be too great an inconvenience to the State to grant Petitioner presentence plea withdrawal.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).[4]

Respondent asserts that several of petitioner's claims for relief have been procedurally defaulted and are subject to dismissal on that basis.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights. Granberry v. Greer, 481 U.S. 129, 133 (1987). Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court. Baldwin v. Reese, 541 U.S. 27 (2004);  Hannah v. Conley, 49 F.3d 1193,

---

[4]There are no issues of untimeliness in this case.

5

1196 (6th Cir. 1995).  In so doing, state courts are afforded "one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established appellate review

process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's

courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis;
> (2) reliance upon state cases employing federal constitutional
> analysis; (3) phrasing the claim in terms of constitutional law or in
> terms sufficiently particular to allege a denial of a specific
> constitutional right; or (4) alleging facts well within the mainstream
> of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326

(6th Cir. 1987), cert. denied, 532 U.S. 958 (2001).  Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th

Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004).  It is not enough to present the

facts giving rise to the federal claim raised in habeas corpus;  a petitioner must present the same

legal theory to the state courts as is presented to the federal courts in order to preserve the claim.

Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).  Even if a claim is related, but distinct, the

claim is nonetheless defaulted.  Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due

process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise

the state court of a specific federal constitutional guarantee so as to exhaust the claim.  Gray v.

Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and

Anderson v. Harless, 459 U.S. 4, 7 (1982).  For example, use of the term "ineffective assistance"

also fails to alert the state courts of the federal nature of a claim.  Baldwin v. Reese, supra.

AO 72A
(Rev. 8/82)

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and would be barred from pursuing relief on that claim in the state courts[5] the petition should not be dismissed for failure of exhaustion, in light of the fact that there would then be no available state remedies. Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to his/her defense at trial or on appeal. Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 84, 808 (6th Cir. 2004).

Petitioner's first and fourth claims for relief will be considered together, as they each challenge the trial court's refusal to grant his motion to withdraw his guilty plea which was premised on the assertion that his plea was not knowingly, voluntarily or intelligently entered.

In his first claim for relief the petitioner asserts that he "was sentenced after an involuntary guilty plea." In this Court's opinion this claim has been procedurally defaulted, and also fails upon merits review.

It was not until after petitioner's conviction upon his guilty plea was remanded by the Ohio Supreme Court for re-sentencing on the authority of State v. Comer, 99 Ohio St.3d 463 (2003), that petitioner first filed a motion to withdraw his plea of guilty, which was denied by the trial court.

In Steimle v. Jackson, Case No. 1:04CV0813 (N.D.Ohio 2005), a case with similar procedural history, this Court determined in a recommended decision (which was upheld by Judge

_____

[5]Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief. See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978).

7

Aldrich) that when the petitioner failed to file his motion to withdraw a plea of guilty prior to his

original sentencing, as he was obligated to do under Rule 32.1 of the Ohio Rules of Criminal

Procedure, but instead waited until after his direct appeal was filed with the state appellate court

the trial court was divested of jurisdiction to hear his motion, quoting the following from the state

court's decision in the underlying action:

> Pursuant to the Ohio Supreme Court's decision in *State ex. rel.
> Special Prosecutors v. Judges, Court of Common Pleas* (1978), 5
> Ohio St.2d 94, 98, the trial court properly denied reconsideration of
> Steimle's Crim.R. 32.1 motion because it lacked jurisdiction. The
> Ohio Supreme Court held that Crim.R. 32.1 does not vest
> jurisdiction in a trial court to maintain and determine a motion to
> withdraw a guilty plea subsequent to an appeal and an affirmance by
> the appellate court. Id. **In other words, Crim.R. 32.1 does not
> confer upon the trial court the power to vacate a judgment
> which has been affirmed by the appellate court, for such action
> would affect the decision of the reviewing court, which is not
> within the power of the trial court.**
>
> In the instant case, Steimle's conviction was affirmed on appeal in
> *Steimle I* and remanded in both *Steimle I* and *Steimle II* for the sole
> purpose of resentencing. Therefore, the trial court was without
> jurisdiction to consider the motion and properly refused to rehear
> the motion.
>
> Assuming arguendo that the trial court had jurisdiction, res judicata
> bars further consideration of Steimle's arguments. **The doctrine of
> res judicata bars further litigation in a criminal case of issues
> which were raised previously or could have been raised
> previously in a direct appeal.** *State v. Leek,* Cuyahoga App.No.
> 74338, 2000 Ohio App. Lexis 2909, citing *State v. Perry* (1967), 10
> Ohio St.2d 175, paragraph nine of the syllabus. Accordingly,
> Steimle's failure to properly raise the plea issues in his first direct
> appeal in *Steimle I* bars this court's later consideration. Therefore,
> the first and second assignments of error are overruled.

(Emphasis added.)

In this case, as in Steimle, the conviction consequent to the guilty plea was upheld on direct

8

appeal, although the sentence was vacated and the case remanded solely for re-sentencing. At that point the trial court lacked jurisdiction to consider petitioner's motion to withdraw his plea of guilty. Even if that were not the case, res judicata would have served to bar further review of petitioner's claims of involuntary guilty plea.

The foregoing aside, this claim for relief also fails upon merits review, as does his fourth claim, in which he argues that the trial court's denial of his motion to withdraw was an abuse of discretion in light of the fact that it was allegedly based upon the "inconvenience" of bringing two witnesses from England, on the delay in filing the motion, and on the fact that petitioner entered the plea after learning that defense counsel was not prepared to go to trial and had not subpoenaed a necessary alibi witness.

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." Boykin v. Alabama, 395 U.S. 238, 242 (1969). Due to the impact of such a plea on a defendant's constitutional rights, a federal court on habeas corpus review may only overturn a conviction based upon a guilty plea if it is found that the plea violated a petitioner's constitutional right to due process. Brady v. United States, 397 U.S. 742, 747 (1970).

It is manifest that a plea of guilty or no contest is valid if it is entered by a defendant knowingly, intelligently and voluntarily, without coercion. Bousley v. United States, 523 U.S. 614, 618 (1998); Brady v. United States, supra at 747; Boykin v. Alabama, supra at 242; Stumpf v. Mitchell, 367 F.3d 594, 600 (6th Cir. 2004), reversed in part on other grounds, 545 U.S. 175 (2005). In order to withstand a post-conviction challenge to the voluntariness of the plea the record must be clear as to the voluntariness. Boykin v. Alabama, supra at 242.

AO 72A
(Rev. 8/82)

In a federal habeas corpus proceeding in which a petitioner challenges the validity of a guilty plea it is the duty of the respondent to demonstrate that the guilty plea was entered knowingly, intelligently and voluntarily, which is typically accomplished by submission of a presumptively correct plea proceeding transcript. Stumpf v. Mitchell, supra at 600, citing Garcia v. Johnson, 991 F.2d 324, 326 (6ᵗʰ Cir. 1993). The totality of the circumstances surrounding the entry of a plea must show that the plea was not coerced by threats or misrepresentations and that the defendant was informed of all the direct consequences of the plea, Brady v. United States, supra at 755; Stumpf v. Mitchell, supra at 609, including potential maximum sentences, King v. Dutton, 17 F.3d 151, 154 (6ᵗʰ Cir. 1994), as well as mandatory minimum sentences, United States v. Stubbs, 279 F.3d 402, 412 (6ᵗʰ Cir. 2002), vacated and remanded on other grounds, 543 U.S. 1104 (2005). A ruling by a state court upholding the validity of the guilty plea is presumed correct, unless there is a showing that the plea proceeding transcript is somehow inadequate to demonstrate that the plea was entered knowingly, intelligently and voluntarily. Stumpf v. Mitchell, supra at 600, citing Garcia, supra at 326-27.

Mere post hoc claims by a petitioner that a plea agreement was different than what appeared on the record cannot, standing alone, overcome the presumption that the guilty plea was valid, the rationale being:

> If we were to rely on [the defendant]'s alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statement during the plea colloquy...indicating the opposite.

Ramos v. Rogers, 170 F.3d 560, 566 (6ᵗʰ Cir. 1999), cert. denied, 528 U.S. 847 (1999).

10

In affirming the trial court's denial of petitioner's motion to withdraw his guilty plea the state court held in pertinent part:

> In his first assignment of error, Defendant alleges that the trial court erred in denying his motion to withdraw his plea. Defendant insists that his original plea was involuntary: "[Defendant] pleaded guilty because his original trial counsel failed to prepare for trial." Accordingly, Defendant states that his motion to withdraw his plea, entered before re-sentencing, should have been granted. We disagree.
>
> Crim.R. 32.1 permits a defendant to file a pre-sentence motion to withdraw his plea. A defendant, however, has no absolute right to withdraw his plea. *State v. Xie* (1992), 62 Ohio St.3d 521, paragraph two of the syllabus. While a trial court should freely and liberally grant a motion to withdraw a plea, the decision rests within the sound discretion of the trial court. Id. at 526. We review the trial court's denial of a motion to withdraw plea for an abuse of discretion. Id. An abuse of discretion implies more than a mere error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its own judgment for that of the trial court. Id.
>
> A trial court does not abuse its discretion in denying a motion to withdraw plea where three elements are met. *State v. Robinson*, 9th Dist. No. 21583, 2004-Ohio-963, at ¶30. First, the defendant must have been represented by competent counsel; second the court must provide the defendant a full hearing prior to accepting the original guilty plea; and, finally, the court must provide a full hearing to the defendant, considering all the arguments in favor of withdrawal of his plea, before rendering a decision on the motion. Id. Where a defendant alleges that his counsel was incompetent, or provided bad legal advice, it is still within the discretion of the court to deny a motion to withdraw a plea if the court determines that the attorney's acts were not the deciding factor in the defendant's guilty plea. *State v. Donner* (1994), 96 Ohio App.3d 486, 493.
>
> In this case, Defendant challenges all three of these elements. First, he states that his counsel was not competent, as counsel was not prepared to go to trial and had not subpoenaed Defendant's

AO 72A
(Rev. 8/82)

necessary alibi witness. The record indicates that a notice of alibi defense was timely filed before trial, yet no subpoena was issued for any defense witnesses. In addition, a letter to the court many months prior to trial indicated that Defendant was not satisfied with the amount of time that defense counsel had dedicated to this case. However, any indication that defense counsel was completely unprepared for trial, as alleged by Defendant, is supported only by Defendant's base assertion.

Further, Defendant makes no showing of the ineffective assistance of his counsel. In order to support such a claim, Defendant must show that the acts of his counsel were ineffective, and that those acts prejudiced Defendant. *State v. Bradley* (1989), 42 Ohio St.3d 136, 141-42. Even if we assume for the sake of argument that his counsel was completely unprepared for trial, Defendant has failed to show this Court how he was prejudiced by that failure. He offered no evidence regarding the content of the testimony of the alleged alibi witness. This Court simply will not sustain an ineffective assistance of counsel claim based on pure speculation as to what a witness might have said at trial. See *State v. Stalnaker*, 9th Dist. No. 21731, 2004-Ohio-1236, at ¶¶8-9.

As to the second element, the trial court conducted a full hearing on the voluntary nature of Defendant's plea. When asked whether he was under any compulsion to plead guilty, Defendant answered unequivocally that he was not. Defendant is correct that, in certain cases, a guilty plea is rendered involuntary where a defendant pleads guilty based on the lack of faith in his attorney. See *State v. Gordon*, 149 Ohio App.3d 237, 2002-Ohio-2761, at ¶¶17-18. In that case, however, the defendant continually put the court on notice that he was only pleading guilty due to his distrust of counsel's abilities. Id. at ¶16. In the case at bar, there is no indication on the record that Defendant, at the time of trial, found his counsel incompetent or unprepared. Again, we will not find Defendant's plea involuntary based on the speculation of what may have occurred where no evidence on the record supports such allegations.

Defendant was also afforded a full hearing by the court on his motion to withdraw his plea, regardless of the last minute nature of that motion. The motion in this case is actually absent from the record and does not appear on the docket sheet. However, when Defendant appeared before the trial court for sentencing, the judge indicated that she was "handed [the motion] seconds ago[.]" the

12

State also stated that it had not received the motion until the morning of the sentencing hearing. The court permitted argument by both parties.

The State reminded the court that Defendant had failed a polygraph examination soon before trial, the results of which would have been admissible by prior stipulation. Also, the State mentioned the expense necessary to bring back two of the witnesses from England for trial, both of whom had been present and waiting for the trial to commence the morning that Defendant entered his original guilty plea.

Defense counsel, on the other hand, highlighted the timing of Defendant's plea: Defendant was "very clear that he want[ed] to go to trial[,]" and pleaded guilty only after defense counsel insisted upon conferencing with Defendant, a discussion which Defendant tried firmly to resist by stating that he wanted to go to trial. Counsel further illustrated with the docket that a notice of alibi had been timely filed, yet no subpoena had issued for the alibi witness. When offered the opportunity to speak on his own behalf at the hearing, Defendant opted not to as the court indicated that it had enough information in front of it to make a decision on the motion to withdraw the plea.

Following these arguments by both parties, the court carefully considered, on the record, the multiple factors presented, and rendered a decision to deny the motion. The court first noted that the timing of Defendant's plea was not unusual: "I have every single day of the week defendants who say, 'I'm ready to go to trial,' and then five, ten minutes later decide they want to change their mind. I certainly don't think that's unusual whatsoever." The court found significant that Defendant had recently failed a polygraph test, the results of which were admissible at trial, and that he pleaded guilty only after speaking with family members. She further noted the failure of Defendant to ever raise the particular argument that counsel was unprepared in the two years since he was originally sentenced, and considered the expense of bringing the two witnesses back from England for a second time.

After reviewing the record, we find that the trial court did not abuse its discretion in denying Defendant's motion to withdraw his plea. Licensed attorneys are presumed competent in Ohio. *State v. Lytle* (1976), 48 Ohio St.2d 391, 397. Defendant has failed to show that

13

his counsel was not competent, the trial court afforded him a full hearing on the voluntary nature of his plea, and the court further carefully considered the arguments supporting his motion to withdraw his plea in a second hearing. Accordingly, we overrule Defendant's first assignment of error.

This Court has reviewed the transcript of the plea proceeding and finds unconvincing petitioner's argument that his plea was entered involuntarily, especially in light of the fact that during the plea proceeding he acknowledged that he was entering his plea with full awareness of the maximum penalty he could receive and the rights he was waiving by entering his plea. During the course of his colloquy with the trial court petitioner made no attempt, either personally or through his attorney, and while under an obligation to answer the court's questions truthfully, to inform the court that his plea of guilty was induced by misrepresentation or coercion, that his understanding of the plea agreement differed from what was being described by the court and attorneys, or that he lacked an understanding of the consequences of the charges to which he would be entering a plea. Having failed to do so, he cannot now be heard to say that he was not aware of the consequences which would follow.

Petitioner has failed to show that the decision of the state appellate court upholding the trial court's denial of his motion to withdraw, as well as the validity of the guilty plea entered by petitioner, has either resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the decision was based upon an unreasonable determination of the facts in light of the evidence presented. Consequently, petitioner's first and fourth claims for relief are without merit.

In petitioner's second claim for relief he argues that he was improperly sentenced by the trial court in its re-re-sentencing of November 17, 2005 when it imposed more than the minimum

14

consecutive sentences without reliance upon factual findings made by a jury to enhance his sentence beyond the minimum sentence under the law, in violation of the rule of law set out by the United States Supreme Court in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). Petitioner argues further that the remedy set forth in <u>State v. Foster</u>, 109 Ohio St.3d 1, 845 N.E.3d 470 (2006), violates the Ex Post Facto and Due Process Clauses of the United States Constitution, in light of the fact that the effect of that decision was to increase the presumptive sentences for first-time offenders and to expose those convicted of fourth and fifth degree felonies to the statutory maximum, despite the fact that the pre-<u>Foster</u> rule which was in effect at the time of his plea and initial sentencing included a presumption that he would be sentenced to a minimum of three years for aggravated robbery, as well as three years on the gun specification.

In <u>Blakely</u>, the Court held that violations of the Sixth Amendment to the United States Constitution could be avoided if "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id</u>. at 301 (quoting <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000)). Although the <u>Blakely</u> case limited the authority of the trial judge to impose sentences in excess of the maximum provided by law, the authority of a sentencing judge to impose a sentence within the prescribed statutory range for a particular offense was not limited in the same way.

In January of 2005 the United States Supreme Court held, in <u>United States v. Booker</u>, 543 U.S. 220, 245, 259 (2005), that the mandatory provisions of the United States Sentencing Guidelines were unconstitutional under the <u>Blakely</u> decision, but they could be used in an advisory manner.

The Ohio Supreme Court applied the <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> decisions to the Ohio

15

sentencing guidelines and held that parts of Ohio's felony sentencing scheme were unconstitutional, including Ohio Revised Code §§ 2929.14(B), 2929.19(B)(2), and 2929.41, which provide for judicial findings of fact in order to rebut presumptions in sentencing terms; §2929.14(C), providing for the imposition of maximum sentences; §2929.14(D)(2)(b), findings for repeat violent offender; §2929.14(D)(3)(b), major drug offenders; §2929.14(E)(4), providing for the imposition of consecutive sentences;[6] and §2953.08 (G), statutory findings for consecutive sentences in the appellate record. State v. Foster, 109 Ohio St.3d 1, 62-67, 83, 845 N.E.2d 470 (2006). The constitutional violation was premised upon the fact that those provisions require judicial findings of fact beyond those either rendered by the jury or admitted to by the defendant. Ibid. Those offending portions of the sentencing code were severed, *but trial courts retained full discretion to impose sentences within the statutory range while no longer being required to make findings of fact or to articulate reasons for imposing maximum or consecutive sentences.* Id. at 100. As the Court did in Booker, the Ohio Supreme Court determined that its holding in Foster was to be applied to any case pending on direct appeal, and that where sentences were found to have been constitutionally invalid, remanding and re-sentencing were in order.

The Ex Post Facto Clause provides that "no State shall...pass any...ex post facto Law." U.S. Constitution, Art. I., §10, cl.1. Ex Post Facto Clause challenges to the Foster decision have been repeatedly denied by Ohio state courts. State v. Swann, 171 Ohio App.3d 304, 314, 870 N.E.2d 754, 762 (2007); State v. Sharp, unreported, Case No. 89295, 2007 Ohio App. LEXIS 5549

---

[6]On January 14, 2009 the United States Supreme Court decided Oregon v. Ice, 555 U.S. ___, 2009 U.S. LEXIS 582 (2009), which abrogated this portion of the Foster decision and held that judicial factfinding to determine whether consecutive sentences should be imposed does not violate Apprendi/Blakely. In so doing, the Court expanded the scope of judicial factfinding discretion in sentencing.

16

(Ct.App.Cuy.Cnty. 2007); State v. McGhee, unreported, Case No. 17-06-05, 2006 Ohio App. LEXIS 5102 (Ct.App. Shelby Cnty. 2006). The McGhee court premised its decision that there had been no violation of the Ex Post Facto Clause in part on the fact that the defendant "knew the potential statutory sentence for committing a first degree felony, ...had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and ...was unlikely to amend his criminal behavior in light of a sentencing change." McGhee, supra at ¶20. The Sharp court determined that "the sentencing range was the same at the time [the defendant] committed the offenses as when he was sentenced," and the Foster case "did not judicially increase the range of his sentence." Sharp, supra at ¶10.

Ex Post Facto Clause challenges to the Booker[7] decision have been repeatedly denied by the federal courts. United States v. Barton, 455 F.3d 649, 657 (6th Cir. 2006), cert. denied, 127 S.Ct. 748 (2006); United States v. Davenport, 455 F.3d 366 (4th Cir. 2006); United States v. Austin, 432 F.3d 598, 599-600 (5th Cir. 2005); United States v. Vaughn, 430 F.3d 518 (2nd Cir. 2005), cert. denied, 547 U.S. 1060 (2006); United States v. Perez-Ruiz, 421 F.3d 11 (1st Cir. 2005), cert. denied, 546 U.S. 1120 (2006); United States v. Dupas, 419 F.3d 916, (9th Cir. 2005), cert. denied, 547 U.S. 1011 (2006); United States v. Jamison, 416 F.3d 538 (7th Cir. 2005) ("Jamison also had fair warning that distributing cocaine base was punishable by a prison term of up to twenty years, as spelled out in the United States Code. Jamison had sufficient warning of the possible consequences of his actions, and his sentence does not run afoul of any of the core concepts discussed in Rogers.")

_____

[7] Significant in light of the fact that the Foster and Booker decisions employed similar rationales to craft similar remedies.

17

Notably, Ex Post Facto challenges similar to that raised by the instant petitioner have also been rejected recently by judges in this district, including Your Honor. <u>Watkins v. Williams</u>, Case No. 3:07CV1296 (N.D.Ohio June 17, 2008) (J. Adams) (The <u>Foster</u> decision did not violate due process as it did not alter the fact that the defendant was well aware of the maximum penalty he faced at the time of his crime.); <u>Lyles v. Jeffreys</u>, Case No. 3:07CV1315 (N.D.Ohio April 24, 2008) (J. Oliver) (The trial court's re-sentencing did not violate petitioner's Due Process right not to be re-sentenced pursuant to a law which violates the Ex Post Facto Clause, as petitioner "had fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts."); <u>McGhee v. Konteh</u>, Case No. 1:07CV1408 (N.D.Ohio Feb. 1, 2008) (J. Nugent) (Affirming Magistrate Judge Limbert's conclusion that "Since the *Foster* decision does not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced for a first degree felony, *Foster* does not raise an ex post facto-type due process violation. Moreover, the trial judge's application of *Foster* to Petitioner's case in particular did not violate *Apprendi* because he did not sentence Petitioner beyond the statutory maximum.")

Petitioner in the instant case was convicted of one first degree felony count of aggravated robbery, with a potential prison term of three to ten years. Ohio Revised Code §2929.14(A)(1). Petitioner had fair notice that he faced a sentence greater than the minimum sentence to which he now claims to have been entitled, as can be found in the following excerpt from the plea/sentencing transcript, which reveals that he was informed of the potential sentence at the time he entered his guilty plea, after which he was sentenced to ten years on the aggravated robbery count, with three years actual incarceration on the firearm specification, for an aggregate of thirteen years.

18

MS. MULLIGAN: Your Honor, this is Case No. 2001 09 2271, State of Ohio versus David Newman.

Mr. Newman is present in court with his counsel Mr. Kerry O'Brien.

He has previously entered a plea of not guilty to a four-count indictment charging him with, in each count, with aggravated robbery, felonies of the first degree with firearm specifications, three-year specifications in each count.

It's my understanding that he's prepared to withdraw his earlier entered pleas of not guilty and enter a plea of guilty to Count I of the indictment, one count of aggravated robbery, along with a firearm specification.

The State would move to merge the four different victims of each of these into Count I and then ask the Court to dismiss the balance of the indictment.

It's my understanding, on tendering this plea, he would then proceed with sentencing and the State would like to make a comment at that time though the State will not recommend a particular sentence.

* * * * *

MR. O'BRIEN: ...So, [Mr. Newman] has indicated to me that he's prepared to plead guilty to the one count of aggravated robbery, felony of the first degree, with a possible sentence of three, four, five, six, seven, eight, nine, or ten plus a three-year gun specification which he understands must run consecutive.

And, with that, if the Court wishes to inquire.

THE COURT: Sir, you're charged in Count I with aggravated robbery, a felony of the first degree.

As your attorney has just stated, the potential penalties for that are three up to ten years in prison; do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Attached to that Count I is a gun specification which

19

carries a three-year term in prison; do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: You understand that the three-year gun specification is mandatory prison time and must run consecutive to any sentence I give you on Count I, the aggravated robbery charge; do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: So, you could be looking at a total of up to 13 years in prison; do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I understand that you may also be on parole. I don't know what affects this may have on your parole, you understand there may be some affect on that; you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any questions about any of the potential penalties in this case?

THE DEFENDANT: No, ma'am.

THE COURT: If you enter into a guilty plea, there are certain rights that you give up.

You have the right to have a trial in this matter.

At that trial the State would have to prove each and every element of their case beyond a reasonable doubt.

You would have the right to confront any of the State's witnesses.

You would have the right to subpoena witnesses in on your behalf.

You would have the right to testify, however, no one can force you to testify or to incriminate yourself.

You give up all of those rights, as well as the right of appeal, if you

AO 72A
(Rev. 8/82)

enter into a guilty plea to this charge today; do you understand that?

THE DEFENDANT: Yes, Your Honor.

The appellate court rejected petitioner's challenges to his sentence, holding in pertinent part:

In Appellant's first assignment of error he contends that the trial court erred by imposing an illegal sentence. More specifically, Appellant contends that the trial court's imposition of the non-minimum consecutive prison terms was unconstitutional under *Blakely v. Washington* (2004), 542 U.S. 296, because only a jury can make the findings necessary to impose such a sentence and that the matter must, therefore, be remanded for re-sentencing under *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. We disagree.

A review of the record reflects that Appellant never challenged the constitutionality of Ohio's statutes in the trial court. In *State v. Dudukovich*, 9th Dist.No. 05CA008729, 2006-Ohio-1309, we held that a defendant must raise the constitutionality of Ohio's sentencing statutes in order to preserve the argument, including any argument under *Foster*, on appeal. See *State v. Metz*, 9th Dist. No. 22763, 2006-Ohio-1551, at ¶9-10; *State v. Duffield*, 9th Dist. No. 22634, 2006-Ohio-1823, at ¶72-74. The record shows that Appellant was sentenced on November 17, 2005, well after *Blakely* was decided. As Appellant failed to raise any objection to his sentence in the trial court and specifically failed to challenge the constitutionality of Ohio's sentencing statutes, he is precluded from raising this argument for the first time on appeal. In addition, as Appellant has not alleged that the trial court committed plain error in his sentencing, we decline to address the issue.

In *Foster*, supra, the Court agreed with the defendants' arguments that Ohio's sentencing structure violated the Sixth Amendment to the extent that it required judicial factfinding. Id. at paragraphs one through seven of the syllabus. In constructing a remedy, the *Foster* court excised the provisions it found to offend the Constitution, granting trial court judges full discretion to impose sentences within the ranges prescribed by statute. Id. Consequently, the trial court is no longer required to consider whether Appellant committed the worst form of the offense or posed the greatest likelihood to reoffend.

21

Here, Appellant pled guilty to one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, with the firearm specification. The trial court sentenced Appellant to ten years on the aggravated robbery conviction and three years on the firearm specification. This sentence fell within the range outlined in R.C. 2929.13(F) and R.C. 2929.14(A)(5). Appellant pointed a firearm at four strangers and demanded that they give him their wallets. In addition, Appellant had prior convictions for two aggravated burglaries and a probation violation. Furthermore, he expressed no remorse for his actions. We find no error in his sentence.

We note that several Ohio appeals courts have remanded for resentencing despite an appellant's failure to raise a *Blakely* objection in the trial court. See, e.g., *State v. Miller*, 2d Dist. No. 21054, 2006-Ohio-1138; *State v. Custodia Mota, et al.*, 6th Dist. No. L-04-1354, 2006-Ohio-3800; *State v. Williams*, 11th Dist. No. 2004-A-0052, 2006-Ohio-2008. Both the Sixth District Court of Appeals in *Custodia Mota* and the Tenth District Court of Appeals in *State v. Payne*, 10th Dist. No. 05AP-517, 2006-Ohio-2552, have certified this conflict to the Ohio Supreme Court for review. Upon review of the latter decisions, we see no reason to revisit *Dudukovich* or its progeny.

Appellant additionally asserts that the remedy outlined in *Foster* violates the ex post facto and due process clauses of the U.S. Constitution because it effectively increases the presumptive sentences for first-time offenders and exposes those convicted of fourth and fifth degree felonies to the statutory maximum. Appellant notes that under the sentencing statutes in effect during his plea and sentencing, there was a presumption that he would be sentenced to a minimum sentence of three years for aggravated robbery plus three years for the gun specification.

We are obligated to follow the Ohio Supreme Court's directive and we are, therefore, bound by *Foster*. Furthermore, we are confident that the Supreme Court would not direct us to violate the Constitution. See *U.S. v. Wade* (C.A.8, 2006), 435 F.3d 829, 832 (holding that the Eighth Circuit is required to follow the directive of the U.S. Supreme Court and presuming that the U.S. Supreme Court would not order a court to violate the Constitution). As this Court cannot overrule or modify *Foster*, we decline to consider Appellant's challenges thereto. Appellant will have the opportunity

22

to present these arguments to the Supreme Court if he chooses to
appeal from this decision.

From the foregoing it is clear that the state appellate court held that in light of the fact that

petitioner's sentence fell within the statutory range, that he pled guilty to using a firearm to rob four

people and in the context of the entry of such plea he admitted the pertinent facts, and that he

admitted through his attorney that he had prior convictions for two aggravated burglaries and a

probation violation, there was no <u>Blakely</u> violation.

The court further rejected the notion of a violation of the Ex Post Facto Clause due to its

finding that petitioner had sufficient warning (both before and after <u>Foster</u>) of his potential sentence

to satisfy the Ex Post Facto and Due Process Clauses in light of the fact that <u>Foster</u> did not change

the potential maximum sentence that he faced if he committed the crime with which he was

ultimately charged, nor did it change the elements necessary to convict him of that crime. In

addition, he was informed that his sentence would fall within the proscribed ranges for a felony

with a specification, with the possibility of consecutive sentences. Petitioner knew that any thought

of receiving a minimum sentence he may have entertained prior to his sentencing was always

vulnerable to change by the sentencing court, and in this case such a notion was specifically

dispelled by the court's colloquy prior to sentencing.

It is at this point in the opinion that this Court is compelled to wade into the somewhat

murky issue of whether, even if Your Honor found that petitioner's sentence violated <u>Blakely</u>, such

a violation could be deemed as harmless error.

Recent decisions of the federal district courts in Ohio reveal differing points of view on a

number of factors pertinent to the issue of whether <u>Blakely</u> violations can be deemed as harmless

error in light of <u>Foster</u>.

At the outset, recent decisions within this court even disagree as to the proper standard of review to be applied in habeas cases addressing the issue of harmless error for <u>Blakely</u> violations.

In <u>Cvijetinovic v. Eberlin</u>, Case No. 04-CV-2555, 2008 U.S.Dist. LEXIS 26483, *64-65 (N.D.Ohio March 311, 2008). Judge O'Malley applied the following standard of review in determining whether a <u>Blakely</u> violation constituted harmless error:

> In the Sixth Circuit, an error is harmless if "none of the defendant's substantial rights have been affected by the error." *United States v. Oliver, 397 F.3d 369k, 381 (6th Cir. 2005).* In the sentencing context, the government bears the burden of demonstrating "with certainty that the error at sentencing did not 'cause [] the defendant to receive a more severe sentence.'" *Emerick v. Wolfe, No. 2:05cv1057, 2006 U.S.Dist. LEXIS 88546, 2006 WL 3500005, at \*2 (S.D.Ohio Dec. 5, 2006)* (quoting *Oliver* 397 F.3d at 379). "[R]emand for an error at sentencing is required unless we are certain that any such error was harmless–*i.e.*, any such error 'did not affect the trial court's selection of the sentence imposed.'" *United States v. Hazelwood, 398 F.3d 792, 801 (6th Cir. 2005)* (quoting *Williams, 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341*).

That standard of review was rejected by Judge Polster in <u>Stalnaker v. Bobby</u>, Case No. 1:07CV2204, 2008 U.S.Dist. LEXIS 91493 (N.D.Ohio November 12, 2008), wherein he held:

> The Magistrate Judge, quoting *United States v. Oliver, 397 F.3d 369, 381 (6th Cir. 2005) (citing Fed.R.Crim.P. 52(a))*, concluded that in the Sixth Circuit, "an error may be harmless only where the government is able to prove that none of the defendant's substantial rights have been affected by the error." (ECF No. 9 at 24.) Moreover, the Magistrate Judge noted that a remand for a sentencing error is required unless "the Court 'is certain that any such error was harmless–i.e. any such error did not affect the [trial court's] selection of the sentence imposed. *(Id. quoting United States v. Hazelwood, 398 F.3d 792, 801 (6th Cir. 2005) (internal citation omitted*).) As noted by Respondent, the cases cited by the Magistrate Judge involved federal convictions on direct review, not state trial court convictions on collateral and habeas review.

24

>The Magistrate Judge should have applied the standard of review set out by the United States Supreme Court in *Fry v. Pliler*, __ U.S. ___, 127 S.Ct. 2321, 2328, 168 L.Ed.2d 16 (2007). In *Fry*, the Supreme Court held that a federal habeas court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the ... standard set forth in *Brecht [v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)]*." *Fry, 127 S.Ct. at 2328.* The standard is whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht, 507 U.S. at 623 (citation omitted).* "If, however, 'the matter is so evenly balanced' that the habeas court has 'grave doubt' as to the harmlessness of the error, it should 'treat the error, not as if it were harmless, but as if it affected the verdict." *Hereford v. Warren, 536 F.3d 5223, 533 (6th Cir. 2008) (citing O'Neal v. McAninch, 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)).*

Although this Court agrees that the <u>Brecht</u> standard should be applied when the issue in habeas corpus involves a trial error which may have affected the jury's *verdict*, the habeas issue being addressed in <u>Stalnaker</u> was that of sentencing error. In this Court's opinion the standard of review applied in the <u>Cvijetinovic</u> case, explicitly rejected in <u>Stalnaker</u>, is more appropriate when, as in the instant case, a sentencing error is at issue.

Despite having applied different standards of review, however, the judges in the foregoing cases agreed that <u>Blakely</u> errors cannot be harmless due to the fact that upon re-sentencing more than one outcome, including a greater sentence, is possible.

In <u>Cvijetinovic</u>, after highlighting two differing opinions in Ohio federal district courts as to whether <u>Blakely</u> violations constitute harmless error in light of <u>Foster</u>, citing <u>Shafer v. Wilson</u>, 2007 U.S.Dist. LEXIS 6597 (N.D.Ohio Jan. 30, 2007) (finding <u>Blakely</u> violation harmless error in light of <u>Foster</u>) and <u>Perry v. Money</u>, Case No. 1:05CV2737, 2007 U.S.Dist. LEXIS 55342 (N.D.Ohio July 31, 2007) (finding <u>Blakely</u> error was not harmless after <u>Foster</u>), Judge O'Malley held:

25

AO 72A
(Rev. 8/82)

Judge James Gwin of the Northern District of Ohio first articulated the view that *Blakely* error was harmless after *Foster*. *See Shafer, 2007 U.S. Dist. LEXIS 6597, 2007 WL 315760 at *11.* Judge Gwin reasoned that the error was harmless because, upon re-sentencing, the trial Judge would have full discretion to re-sentence the petitioner to exactly the same sentence. *Id.* In *Shafer*, the petitioner had been convicted of a crime for which the presumptive minimum sentence–*i.e.*, the required sentence absent certain findings, including judicial factfinding–was three years, but the statutory range was between three and ten years. *2007 U.S.Dist. LEXIS 6597, [WL] at 10.* The trial court sentenced the petitioner to five years, apparently justifying the sentence above the presumptive minimum by finding that the petitioner showed no remorse and abused a position of trust. *Id.* Based on these facts, Judge Gwin found harmless error:

> After the Ohio Supreme Court's decision in *State v. Foster*, sentencing judges are free to impose any sentence within the applicable statutory range without the need to make any specific judicial findings. *See Foster, 845 N.E.2d at 496.* Stated otherwise, because Ohio remedied its unconstitutional sentencing regime by making its guidelines advisory, there is no reason to believe the Petitioner would receive a more favorable sentence if the Court grants his habeas request for relief. In light of the fact that the Supreme Court has held that *Blakely* violations are not "structural" errors that require automatic reversal, we therefore agree with Respondent that no basis exists for granting the Petitioner's request for relief despite the fact that his re-sentencing clearly did violate *Blakely*.

*Id.*

Judge O'Malley then explained how the reasoning employed by Judge Gwin was rejected by other courts,[8] particularly that in <u>Villagarcia v. Warden</u>, Case No. 05CV810, 2007 U.S.Dist.

---

[8]Still other courts agreed with Judge Gwin's reasoning. For example, in <u>Leach v. Husdon</u>, Case No. 1:06CV0638, 2007 U.S.Dist. LEXIS 27632 (N.D.Ohio 2007), Judge Nugent held that a <u>Blakely</u> error was harmless where the petitioner was unable to demonstrate that a more favorable sentence would be imposed if habeas relief would be granted. In <u>Smith v. Moore</u>, Case No. 3:07CV1121, 2008 U.S.Dist. LEXIS 64371, *5-6 (N.D.Ohio Aug. 19, 2008), Judge Adams agree with <u>Shafer</u> and found such an error to be harmless, holding in pertinent part:

(continued...)

26

AO 72A
(Rev. 8/82)

LEXIS 23796 (S.D.Ohio March 30, 2007) (J.Frost), stating:

> In *habeas* cases involving the same issue, the reasoning in *Shafer* was expressly rejected by several other Ohio district courts. *See Villagarcia, 2007 U.S.Dist. LEXIS 23796, 2007 WL 1028528, at *4; Noland, 523 F.Supp. 2d at 663; Perry, 2007 U.S.Dist. LEXIS 553422, 2007 WL 2236634 at *13; Shahan v. Jeffries, No. 2:06cv160, 2007 U.S.Dist. LEXIS 35149, 2007 WL 1432042, at *3 (May 14, 2007)*. These courts reasoned that the fact that an error *could* be harmless does not satisfy the harmless error standard. As stated by Judge Frost in *Villagarcia*:

>> The flaw in [the reasoning in *Shafer*] is that it equates a possibility of no actual prejudice in terms of the eventual sentence received with an actuality of no prejudice resulting from a constitutional error....[B]ecuase more than one outcome is possible upon re-sentencing, basing harmlessness on assumed certainty is flawed. It converts the concept of harmless error in this context into a doctrine of always harmless error. Such conversion is especially dangerous when, as here, the possibility of a different sentence must logically preclude any

---

[8](...continued)

> While this district has issued conflicting decisions on the issue of harmless error under this scenario, the Court is persuaded that any such error was harmless. As noted above, prior to *Foster*, the Ohio Court was required to make findings prior to *increasing* a defendant's sentence beyond the presumptive minimum. As a result, the findings, while violating the *Sixth Amendment*, actually served to protect a defendant from a harsher sentence. Accordingly, the Court can say with certainty that the error complained of "did not affect the [ ] court's selection of the sentence imposed." If anything at all, the prior unconstitutional sentencing structure benefitted Petitioner and prohibited the trial court from imposing an even higher sentence."

In Rettig v. Jefferys, Case No. 3:06CV2252, 2007 U.S.Dist. LEXIS 97648, **18-20 (N.D.Ohio Dec. 17, 2007), Magistrate Judge McHargh relied on Shafer in deciding that the Blakely violation under his consideration constituted harmless error. Although Judge Polster subsequently upheld the Magistrate Judge's decision in Rettig v. Jefferys, Case No. 3:06CV2252, 2008 U.S.Dist. LEXIS 30912 (N.D.Ohio April 15, 2008), which would seem to be contrary to other cases in which he held Blakely errors could *not* be harmless, he subsequently explained in Cooper v. Hudson, Case No. 3:07CV610, 2008 U.S.Dist. LEXIS 37070, at *20-24 (N.D.Ohio May 5, 2008), that the Rettig case was distinguishable in that there were no objections to the Magistrate Judge's Report and Recommendation in Rettig, so that there was no de novo review, and that in Rettig the petitioner based his Blakely argument on the imposition of "consecutive, rather than statutory presumptive, concurrent, sentences[,]" whereas in Cooper the issue was "sentences enhanced above the statutory presumptive minimum."

AO 72A
(Rev. 8/82)

> habeas court from saying for a certainty that error is
> harmless. *See United States v. Hazelwood, 398 F.3d
> 792, 801 (6th Cir. 2005)* ("Under the harmless error
> test, a remand for an error at sentencing is required
> unless we are certain that any such error was
> harmless").

> *Villagarcia, 2007 U.S.Dist. LEXIS 23796, 2007 WL 1028528 at *4.*

Judge O'Malley then concluded:

> The Court agrees with the reasoning in *Villagarcia*. A sentencing
> error is not harmless if the petitioner could receive a lesser sentence
> absent unconstitutional judicial fact-finding.

In Stalnaker, Judge Polster agreed with the foregoing outcome, rejecting the reasoning employed by Judge Gwin in Shafer, and relied on the fact that "other federal district courts in Ohio have come to the opposite conclusion, expressly rejecting *Shafer's* reasoning and holding that the possibility of a higher sentence on remand did not render harmless the error in a *Blakely*-violative sentence." 2008 U.S.Dist. LEXIS 91493 at *28, citing Cvijetinovic and Villagarcia. He held:

> Respondent is correct that because Stalnaker will be sentenced
> under Ohio's current sentencing scheme, the state trial court could
> increase Stalnaker's prison term, without stating findings to justify
> the enhancement. On the other hand, Stalnaker could receive a
> lower sentence. **The Court cannot presume to know what
> another judicial officer will do.** Therefore, Respondent cannot
> meet its burden of proof that the *Blakely* error was harmless.

(Emphasis added.)

This Court's concern with the foregoing reasoning is that the rationale that because no court could *ever* "presume to know what another judicial officer will do" upon re-sentencing after a Blakely violation, Blakely violations could *never* be harmless is exactly opposite to the conclusion reached by the United States Supreme Court in Washington v. Recuenco, 548 U.S. 212 (2006).

28

In that case the state sentencing law called for a three-year enhancement if a firearm was used to commit an assault, whereas a one year enhancement would apply if a "deadly weapon" was used in the commission of the crime. The verdict form asked the jurors to indicate whether a "deadly weapon" was used, which the jurors answered in the affirmative. At trial, the evidence was that a firearm was used. The lower state appellate court held that the trial court's finding that defendant used a firearm and imposition of a three-year enhancement instead of relying on the jury verdict finding that a deadly weapon was used which would have called for a one-year enhancement constituted a <u>Blakely</u> violation. The United States Supreme Court granted certiorari to address the question of whether a <u>Blakely</u> violation could ever be deemed as harmless error. The defense had asserted that harmless error analysis could not be applied in light of the fact that at the time the defendant was convicted Washington state law had no procedure by which a jury could determine whether a defendant was armed with a firearm.

The Supreme Court held that if the defendant's theory of the case was correct, then that defendant had the potential to establish that the error in his particular case was not harmless, but it would *not* translate that into a finding of a <u>Blakely</u> violation "in general–which was of the same nature regardless of whether the error involved a fact that state law permitted to be submitted to the jury–was structural and thus never harmless." 548 U.S. 212 at Headnotes 2A and 2B. The Court did not resolve the issue as to whether as a matter of Washington state law the <u>Blakely</u> violation was harmless, but held that the lower court erred when it found the error to be structural in nature and, therefore, <u>never</u> harmless. The Court emphasized that "Failure to submit a sentencing factor to the jury is not "structural" error. If a criminal defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that most constitutional errors are

29

subject to harmless-error analysis....Only in rare cases has this Court ruled an error 'structural,' thus requiring automatic reversal." Id. at Syllabus, paragraph 2 (Citations omitted.)[9]

There is nothing in the Supreme Court's opinion indicating that the potential for a different sentence upon re-sentencing after a Blakely violation necessitated a finding that the error could never be harmless.

In fact, while in Washington v. Recuenco the question of whether as a matter of state law a Blakely error could be deemed as harmless remained open, Ohio state courts have held that such an error can be harmless. State v. Frazier, Case No. 05AP-1323, 2007 Ohio App. LEXIS 6, at **28-29, **31 (Ohio Ct. App. Jan. 5, 2007); State v. Peeks, Case No. 05AP-1370, 2006 Ohio App. LEXIS 6231, at **10-11 (Ohio Ct. App. Nov. 30, 2006), discretionary appeal allowed, 2007 Ohio LEXIS 721 (Ohio March 28, 2007).

This being so, this Court is of the opinion that even if Your Honor finds that there was a Blakely error in petitioner's re-re-sentencing, such error was harmless, particularly where he had been sentenced to the same sentence on three separate occasions.

As a consequence of the foregoing, petitioner has failed to show that the state appellate court decision upholding petitioner's re-re-sentencing of November 17, 2005 , resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor that the decision was based upon an

---

[9]The Villagarcia case, upon which the district courts relied in disagreeing with the reasoning in Shafer, glossed over the Supreme Court's holding in Washington, by briefly analyzing the case and then finding, "Washington is therefore not analogous to the case here where there is no contention that the jury could not have conducted the factfinding." 2007 U.S.Dist. LEXIS 23796, at *10. For the reasons articulated previously, this Court is of the opinion that the Washington case, in which the Supreme Court held that a Blakely error could be deemed harmless, is pertinent where the question is whether a Blakely error is harmless, and Washington should have been more heavily relied upon in the face of lower court opinions the outcome of which can be found to imply that a Blakely error could *never* be deemed harmless.

unreasonable determination of the facts in light of the evidence presented.

It follows that petitioner's second claim for relief is without merit.

In his third claim for relief the petitioner argues that he was denied his right to the effective assistance of trial and appellate counsel, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States, when trial and appellate counsel failed to correctly raise the Blakely issue. This argument turns on the underlying assertion that in 2005 he was improperly re-re-sentenced by the trial court when it relied on facts neither admitted by him nor determined by a jury to enhance his sentence beyond the minimum sentence, in violation of the rule of law set out by the United States Supreme Court in Blakely v. Washington, supra. The re-re-sentencing occurred after the Blakely decision but about three months prior to the Ohio Supreme Court's decision in Foster, both of which have been detailed previously herein, along with the Apprendi and Booker decisions.

At the time of petitioner's re-re-sentencing, most Ohio courts had held that the Blakely decision did not apply to Ohio's sentencing scheme. State v. Foster, 845 N.E.2d at 487-488.[10] The Foster court further noted that although the Ohio Eleventh District Court of Appeals applied the

---

[10]Respondent cites the following Ohio cases in support of the fact that at the time of petitioner's re-re-sentencing "nine of Ohio's twelve appellate districts..had held that Blakely was not applicable to Ohio's sentencing scheme." State v. Trubee, 2005-Ohio-552, 2005 Ohio App. LEXIS 592 (3rd App. Dist. Ohio, 2005); State v. Johnson, 2005-Ohio-3943, 2005 Ohio App. LEXIS 3623 (4th App. Dist. Ohio, 2005); State v. Weese, 2005-Ohio-3996, 2005 Ohio App. LEXIS 3646 (6th App. Dist. Ohio, 2005); State v. Goins, 2005-Ohio-1439, 2005 Ohio App. LEXIS 1404 (7th App. Dist. Ohio, 2005); State v. Cooper, 2005-Ohio-3424, 2005 Ohio App. LEXIS 3192 (8th App. Dist. Ohio, 2005); State v. Rowles, 2005-Ohio-14, 2005 Ohio App. LEXIS 8 (9th App. Dist. Ohio, 2005); State v. Sanchez, 2005-Ohio-3783, 2005 Ohio App LEXIS 3482 (10th App. Dist. Ohio, 2005); State v. Reen, 2005-Ohio-2067, 2005 Ohio App. LEXIS 1992 (11th App. Dist. Ohio, 2005); and State v. Farley, 2005-Ohio-2367, 2005 Ohio App. LEXIS 2254 (12th App. Dist. Ohio, 2005). As the respondent asserts, it was not until the Ohio Supreme Court's decision in Foster that the issue of whether Blakely applied to Ohio's sentencing guidelines was resolved.

AO 72A
(Rev. 8/82)

Blakely decision to repeat violent offender sentencing enhancements, it was not otherwise held to be applicable to Ohio's sentencing scheme. Id. at 487-488, n. 78, 80 (citing State v. Payne, Case No. 2004-L-118, 2005 Ohio 7043, 2005 Ohio App. LEXIS 6355 (Ohio Ct. Ap. Nov. 29, 2005) and State v. Rupert, Case No. 2003-L-54, 2005 Ohio 1098, 2005 Ohio App. LEXIS 1067 (Ohio Ct. App. March 11, 2005, reversed by In re Ohio Crim. Sentencing Statutes Cases, 847 N.E.2d 1174 (Ohio 2006)). The Eleventh District had specifically issued decisions prior to the Foster case in which Blakely was distinguished and it was determined that trial courts did not violate the Blakely case by engaging in judicial factfinding. State v. Dinapoli, Case No. 2003-L-169, 2005 Ohio App. LEXIS 859, at **22-26 (Ohio Ct. App. Feb. 25, 2005), reversed by In re Ohio Crim. Sentencing Statutes Cases, 847 N.E.2d 1174 (Ohio 2006); State v. Taylor, 821 N.E.2d 192, 197 (Ohio Ct. App. 2004).

It follows that petitioner's trial counsel would have had no reason to argue that the 2005 re-re-sentencing violated the rule of law in Blakely.

The Sixth Circuit Court of Appeals, in a habeas case in which the petitioner raised a claim of ineffective assistance of appellate counsel for failure to challenge the imposition of consecutive sentences without the requisite judicial findings to rebut the presumption of concurrent sentences under the pre-Foster felony sentencing scheme, rejected that petitioner's arguments and upheld the denial of his petition for writ of habeas corpus. Minor v. Wilson, Unreported, Case No. 05-3534, 2007 U.S.App. LEXIS 1067 (6th Cir. 2007). In so doing, the court explained that there had been a dramatic change in Ohio's felony sentencing law in response to the Apprendi and Blakely cases, citing the Foster case, but noted that Mr. Minor could not benefit from those changes in light of the fact that his case was not pending on direct review at the time of the change in law and that, in any

32

event, the new sentencing scheme would work to his detriment considering that "trial courts [were] now no longer required to make any findings or give any reasons when imposing consecutive sentences." Id. at p.5, n.1. That same new felony sentencing scheme would work to the detriment of the petitioner in the present case in that the sentences imposed herein were within the statutory limits, and under the post-Foster sentencing rules the trial court is not required to engage in factfinding or to articulate its rationale in order to impose concurrent (or consecutive, for that matter) sentences within the statutory limits.

In this case petitioner's appellate counsel did not raise the issue of ineffective assistance of trial counsel for failing to preserve the issue below, nor did counsel argue plain error in the re-re-sentencing under Blakely. As this Court has previously found that trial counsel was not ineffective for failing to preserve the Blakely issue at sentencing, it would naturally follow that appellate counsel would not be ineffective for failing to raise on appeal the issue of ineffective assistance of trial counsel.

Petitioner has argued that his appellate counsel's ineffective assistance was the "cause" of his failure to raise the issue of plain error in the main brief on appeal, as opposed to merely raising it in the reply brief. In light of the overwhelming case law indicating that pre-Foster most Ohio courts had held that the Blakely decision did not apply to Ohio's sentencing scheme,[11] his appellate counsel could not have been expected to anticipate that the Ohio Supreme Court would disagree with those rulings as it did in Foster. The Sixth Circuit Court of Appeals has rejected claims of ineffective assistance of trial and appellate counsel for failing to anticipate a change in law as it pertained to Blakely issues. United States v. Burgess, 142 Fed.Appx. 232, 2005 U.S.App. LEXIS

---

[11]Foster was decided after the appeal was filed but prior to the ruling in his case.

12339 (6ᵗʰ Cir. 2005).  Accord, <u>Raines v. United States</u>, Case No. 1:04CV0723, 2006 U.S.Dist. LEXIS 8674 (W.D.Mich. 2006)(citing additional cases reaching the same conclusion).

The issue of cause aside, plaintiff would not be able to establish prejudice pertaining to his appellate counsel's failure to appropriately argue the stand-alone <u>Blakely</u>/plain error issues on appeal, in light of the fact that there is nothing indicating that if the issues had so been argued the outcome of the appeal would have differed.  The fact that petitioner had already had the same sentence imposed in three sentencings, each of which fell within the statutory range, is supportive of the notion that if he was to be sentenced yet another time, the same sentence would be imposed.

That being so, applying the harmless error analysis set forth previously herein, even if the issue had been properly raised on appeal, any <u>Blakely</u> error would have been harmless and, therefore, petitioner cannot demonstrating prejudice consequent to the failure of his appellate counsel to raise the issue in such a way as to have been addressed by the appellate court.

As a consequence of the foregoing, petitioner's third claim for relief is without merit.

In light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits.

It is, therefore, recommended that the petition be dismissed without further proceedings.

DAVID S. PERELMAN
United States Magistrate Judge

DATE:    January 22, 2009

34

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

AO 72A
(Rev. 8/82)